UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-00087 JD |
| | ) | |
| ALEX KINER | ) | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress [DE 17] filed by counsel on November 5, 2010, to which the Government responded on November 12, 2010. [DE 18]. On December 21, 2010, the Court held a hearing on Defendant's Motion, at which Detective Marty Corley of the Michigan City Police Department and Special Agent Kevin Whitaker of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives testified for the government, and Charles Day, the Defendant's brother, testified for the Defendant.

For the reasons discussed below, Defendant's Motion to Suppress is DENIED.

## Background

On February 16, 2010, officers of the Michigan City Police Department Narcotics Task Force, including Detective Corley and Special Agent Whitaker, visited 624 Donnelly Street, Michigan City, Indiana, to serve an arrest warrant for Dejavone Woods, who lived at that address. Corley was admitted to the residence by Johnnie Day, Jr., who told Corley that Woods lived at the address, but that he was not sure whether Woods was home. Corley, Whitaker, and other officers entered the home and performed a protective sweep in an attempt to locate Woods and to ensure officer safety.

In the course of this sweep, Corley and Whitaker entered a bedroom and saw a handgun in plain view in an open shelf in the headboard of a bed. Corley and Whitaker also saw

ammunition in plain view in the room.  After seeing a diploma, picture identification card, and Social Security card bearing Defendant Alex Kiner's name, officers determined that the bedroom was Kiner's.  Officers then spoke with Johnnie Day, Jr., who told officers that the bedroom was Kiner's, that he (Johnnie Day, Jr.) knew that the gun was in the bedroom, and that he had seen Kiner with the gun in the past.  Corley then called the LaPorte County E-911 Communications Center, inquired into Kiner's criminal history record, and learned that Kiner had been convicted of felony robbery, which disqualified him from possessing firearms or ammunition legally, pursuant to 18 U.S.C. § 922(g)(1).

Based on officers' observations in Kiner's bedroom and the criminal history check, Corley phoned-in a request for a search warrant.  He subsequently testified before a LaPorte County Magistrate Judge while other officers remained at the scene to preserve the evidence.  Corley obtained a search warrant for 624 Donnelly Street, which officers then executed.  From Kiner's bedroom, officers recovered a Cobra, model CA380, .380-caliber, black semiautomatic handgun that was missing serial numbers.  The gun's magazine contained three .380-auto bullets.  Officers also recovered sixteen 9mm bullets, fifteen Winchester .380-auto bullets, thirteen 12-gauge shotgun shells, a digital scale with a green leafy substance residue, and a rolling machine with green leafy substance residue from the bedroom.

## Discussion

Defendant's Motion to Suppress [DE 17] challenges the validity of the search warrant for Kiner's residence on several grounds.  Defendant asserts that (1) the handgun was not in plain view; (2) the search warrant application misrepresented that the handgun was in plain view; and (3) the warrant does not describe with particularity the place to be searched.  *Id.* at ¶¶ 4, 6, 7.  However, at the suppression hearing, counsel for the Defendant withdrew the third objection,

instead arguing only that officers lacked probable cause to apply for a search warrant because the handgun was not in plain view when officers entered Kiner's bedroom. Defense counsel also suggested that the search warrant was invalid because, according to Charles Day's testimony, the gun was never in Kiner's possession, and therefore no crime had been committed.

Notably, Defendant does not contend that officers illegally entered the house, *see Quint v. Vill. of Deerfield*, 365 Fed. Appx. 697, 700 (7th Cir. 2010) (applying *Payton v. New York*, 445 U.S. 573, 602-03 (1980) (permitting entry into an individual's residence to execute a warrant for his arrest)), or improperly performed a cursory inspection of the premises to locate DeJavone Woods or to ensure officer safety. *See United States v. Tapia*, 610 F.3d 505, 510 (7th Cir. 2010) (citing *Maryland v. Buie*, 494 U.S. 325, 337 (1990)); *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 628 (7th Cir. 2008) (holding that a visual inspection of an area "in which other persons might be located and from which they could launch an attack" qualifies as a reasonable protective sweep). The only issue before the Court is whether officers had probable cause to request a warrant based on their plain-view observations in Kiner's bedroom.

The standard for suppression in such a case is clear: "A defendant seeking to suppress evidence bears the burden of making a *prima facie* showing of illegality." *United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994) (citing *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)). To suppress the fruits of a search conducted pursuant to a warrant based on a claim that the warrant affidavit contained false information, a defendant must establish by a preponderance of the evidence that "(1) the affidavit contained false information; (2) the false information was included intentionally or with reckless disregard of the truth; and (3) the false information was necessary to establish probable cause." *United States v. Baskin*, 182 Fed. Appx. 568, 570-71 (7th Cir. 2006) (citing *United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001));

*see also United States v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006) (same). As the Seventh Circuit held in *United States v. Etchin*, 614 F.3d 726 (7th Cir. 2010), "[p]robable cause to search a place exists when, based on all of the circumstances, a reasonably prudent person would be persuaded that evidence of a crime will be found there." *Id.* at 735 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The test is an objective one and evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if the reasonable belief of that officer is ultimately found to be incorrect." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003).

In this case, the Defendant has failed to meet this burden. Evidence introduced at the suppression hearing establishes that officers had probable cause to request a search warrant for Kiner's bedroom.

**A. The Defendant Has Not Proved Falsity in the Affidavit**

At the hearing, the Defendant's brother, Charles Day, testified for the Defendant. Day stated that he, not Kiner, possessed the gun found in Kiner's room. He testified that he had the gun in his possession for five years, until the morning in question, when he brought the gun to Kiner's room and hid it in his headboard. Day stated that he did not tell Kiner about the gun, and that Kiner was at work when Day left it. Day claimed that he planned to store the gun in Kiner's headboard for less than a day. After placing the gun inside, Day testified that he closed the sliding door to the headboard, thereby suggesting that the gun was not in plain view when the police arrived. On cross examination, Day stated that he only brought the gun itself to Kiner's room, that he did not bring ammunition, and that there was nothing wrong with the gun's condition. Officers' testimony–that they recovered magazines partially loaded with matching .380 ammunition and the gun's original packaging from Kiner's room, and that the gun was

4

missing serial numbers–conflicts with Day's account.

However, even if accepted as true in its entirety, Day's testimony is insufficient to invalidate the search warrant. The evidence presented by the Defendant does not establish that the headboard was closed when officers arrived. Another individual, such as Dejavone Woods or Johnnie Day, Jr., could have entered Kiner's room and opened the headboard in the interim, leaving the gun in plain view. The Defendant has nowhere introduced evidence to show who was in the house or that the headboard remained closed between the time that Charles Day claims he left the gun and when officers entered the bedroom. Officers' testimony supports the opposite conclusion: that the headboard was open and the gun visible when they arrived.

Additionally, officers still would have had probable cause to request a search warrant even if, as Charles Day claims, Kiner had no knowledge of the gun's presence. Probable cause is assessed from the perspective of a reasonable officer on the scene, so a warrant based on probable cause remains valid even if an officer's reasonable belief turns out to be incorrect. *Payne*, 337 F.3d at 776. Given the aforementioned evidence, a reasonable officer would have concluded that Kiner possessed the gun found in the headboard of his bed.

**B. Probable Cause Existed Independent of the Alleged Falsity**

Moreover, even if officers had not observed the gun in plain view, their undisputed observation of ammunition in plain view provides an independent basis for probable cause. In addition to firearms, felons convicted of certain crimes are prohibited from possessing ammunition legally under federal law. 18 U.S.C. § 922(g)(1). Accordingly, officers who reasonably believe that a prohibited individual possesses ammunition have probable cause to seize relevant items pursuant to a search warrant or to arrest the individual. *See United States v. Blom*, 242 F.3d 799, 808 (8th Cir. 2001) ("A state police officer who knew [the defendant] was a

convicted felon would likely know it was a federal crime for him to possess ammunition, and would surely know that possession of ammunition is 'linked' to the state law crime of possessing a firearm.").

For example, in *United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir. 1994), the court concluded that officers had probable cause to seize an empty ammunition box found during execution of search warrant because the empty box suggests that its contents had been used in a firearm. As the district judge in that case put it, "you can't have one without the other." *Id.* (quoting the district judge approvingly). And in *United States v. Partee*, No. 07-CR-200, 2007 WL 3272477 (E.D. Wis. Nov. 2, 2007), the Court held that officers had probable cause to arrest an individual found in possession of a loaded magazine after they learned that he was a convicted felon. *Id.* at *6.

In this case, Special Agent Whitaker testified at the suppression hearing that he saw ammunition in plain view on a television stand upon entering Kiner's bedroom. Detective Corley also saw the ammunition after Whitaker pointed it out to him. Additionally, Corley noticed a loaded magazine next to the handgun in Kiner's headboard. Upon further inspection of the room, officers saw a box of ammunition in plain view in an open closet in the room.

After making these observations, officers confirmed that the bedroom was Kiner's in several ways. They saw a diploma and a photo identification card bearing Kiner's name. In a wallet in plain view on the headboard, officers found a Social Security card also bearing Kiner's name. Moreover, Johnnie Day, Jr. confirmed to officers that the bedroom in question was Kiner's and that he had seen Kiner with the gun in the past. Officers then called the County Communications Center to determine whether Kiner's criminal history record included a previous conviction that would prohibit him from possessing firearms or ammunition. Officers

learned that Kiner had been convicted of felony robbery in 1993, and therefore was not permitted to possess firearms or ammunition legally, pursuant to 18 U.S.C. § 922(g)(1). Based on this information, officers had probable cause to believe that the gun and ammunition in Kiner's bedroom were evidence of a crime. As a result, officers were justified in requesting a search warrant.

## Conclusion

In sum, the Defendant has failed to establish by a preponderance of the evidence that the gun was not in plain view in Kiner's bedroom, and has failed to make any showing that the search warrant affidavit included false information or that Detective Corley included false information intentionally or with reckless disregard of the truth.[1] Additionally, uncontroverted evidence that officers observed ammunition in plain view provides an independent sufficient basis for probable cause to request a search warrant, even if officers had not seen a gun at all. Accordingly, Defendant's Motion to Suppress [DE 17] is hereby DENIED.

SO ORDERED.

ENTERED: January 12, 2011

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[1] At the outset of the suppression hearing, counsel for the Defendant clarified to the Court that the Defendant was not alleging that Detective Corley lied in his search warrant affidavit, only that the affidavit contained incorrect information.